IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CURTIS STOCKLEY, JR., ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DARBY BOROUGH, ET AL. | : | NO. 10-688 |

**MEMORANDUM**

Padova, J.                                                                                   October 14, 2010

Defendants Darby Borough, Acting Mayor Helen Thomas, Darby Borough Police Chief Robert Smythe, Lieutenant Richard Gibney, Lieutenant Darrell Guy, Officer Anthony Salvatore, and Corporal Joseph Gabe (collectively "Defendants") have filed a Motion to Dismiss Plaintiffs' Amended Complaint, which asserts claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. For the reasons that follow, the Motion is granted.

**I.     BACKGROUND**

The Amended Complaint alleges that, from 2006 to the present, Plaintiff Curtis Stockley, Jr., an African-American male, has been the Elected Constable of Darby Borough in Delaware County, Pennsylvania. (Am Compl. ¶ 7, 17-18.) At all relevant times, Plaintiffs Patrick Ojong and Elijah G.T. Thompson, IV, also African-American males, were Darby Borough Police Officers. (Id. ¶¶ 8-9, 35, 86.) In the relevant time period, Defendant Helen Thomas was the Mayor of Darby; Defendant Robert Smythe was the Chief of the Darby Borough Police Department ("DBPD"); and Defendants Lieutenant Richard Gibney, Lieutenant Darrell Guy, Patrolman Anthony Salvatore, and Corporal Joseph Gabe were all Darby Borough Police Officers. (Id. ¶¶ 11-16.)

According to the Amended Complaint, Stockley, as Constable, is responsible for transporting prisoners and serving warrants. (Id. ¶ 19.) He is compensated for each warrant he serves and for each person he transports. (Id.) On or about January 2, 2007, Defendant Chief Smythe ordered that

a directive be sent to the DBPD that Stockley was no longer allowed to transport DBPD prisoners or use the Darby Prison System jail facilities for any purpose. (Id. ¶ 27.) Around the same time, a meeting was held at which it was decided that Plaintiff was no longer allowed in the Darby Police Station. (Id. ¶ 29.) Smythe's directive "effectively prevent[ed] [Stockley] from performing the duties of a Constable and inhibit[ed] his ability to earn a living." (Id. ¶ 27.) "Since January 2, 2007 until present day, [Stockley] has been fearful to execute any warrants because he is afraid that he will not receive back-up from the DBPD." (Id. ¶ 30.) Moreover, Stockley "is currently unable to earn a living in Darby Borough as the Constable." (Id. ¶ 31.)

Starting in November 2006, Stockley was also employed as School Investigator for the William Penn School District. (Id. ¶ 21.) In a January 2007 meeting, Defendant Smythe told the School District's superintendent and assistant superintendent that Stockley was a member of the Wheels of Soul Motorcycle "Gang," when, in fact, Stockley has not been a member of the Wheels of Soul Motorcycle "Club" for many years. (Id. ¶¶ 22-23.) Smythe also told the two superintendents that he was tired of Stockley "telling politicians that 'the White Man' is running Darby Borough." (Id. ¶ 25.) Stockley "believes and therefore avers that . . . Smythe called . . . Stockley a racist to the Superintendent and Assistant Superintendent" in that January 2007 meeting. (Id. ¶ 26.)

The Amended Complaint further alleges that, in November of 2005, Defendant Ojong was asked to join the DBPD as a part-time patrol officer because Darby Borough had to increase the number of African-American officers on the force. (Id. ¶ 36.) Ojong joined the DBPD as a part-time officer in February of 2006. (Id. ¶ 37.) Although there is an unwritten policy that a police officer can only work in one police department at a time, Ojong and several other officers were employed by more than one department. (Id. ¶ 38.) Ojong, in particular, was simultaneously working for the

Colwyn Police Department. (Id. ¶ 39.)

In June 2006, Ojong was unfairly disciplined for submitting an incomplete police report. (Id. ¶¶ 40-46.) Four months later, in October of 2006, he was again unfairly disciplined, under circumstances in which Caucasian officers who were more culpable than Ojong escaped any discipline. (Id. ¶¶ 49-60.) Later that same month, Ojong was suspended for three days, purportedly for writing a subpar supplemental report, while the Caucasian who wrote the primary report received no discipline. (Id. ¶¶ 61-67.) Thereafter, Ojong was yet again suspended for three days, this time for writing an incomplete juvenile petition, even though he was not given sufficient information to write a more complete petition. (Id. ¶¶ 68-72.) In January 2007, Ojong got into an altercation with Defendant Salvatore over a flashlight, and Salvatore threatened Ojong with his loaded service weapon. (Id. ¶¶ 73-80.) In April 2007, Ojong was denied a clothing allowance that the DBPD provided to all other officers except Plaintiff Thompson. (Id. ¶ 82.) That same month, Ojong was directed to resign because he was not allowed to work for two police departments simultaneously. (Id. ¶ 83.) In 2009, Ojong learned that other police officers in the DBPD were also working simultaneously for two departments. (Id. ¶ 85.)

The Amended Complaint alleges that, from March 2000 to March 2001, Plaintiff Thompson, like Ojong, worked part-time for the DBPD. (Id. ¶ 87.) He left the DBPD in March 2001 in good standing. (Id. ¶ 88.) In 2006, Defendant Guy informally recommended that Thompson apply for a part-time position with the DPBD and, in June of that year, Thompson re-joined the DBPD. (Id. ¶¶ 93-94.) At the same time, Thompson held a position as School Resource Officer at the William Penn School District. (Id. ¶ 90.)

While with the DBPD, Thompson "was subject to numerous senseless, dangerous and life-

threatening situations in which he would call for routine backup . . . and other officers would arrive late, not show up at all or leave the scene early." (Id. ¶ 96.) According to the Complaint, Thompson and Ojong were both "excluded from most calls, except certain calls that the White Officers didn't want to answer." (Id. ¶ 97.) In addition, "the White Officers would order food and eat together never inviting the Black Officers to join them." (Id.) Thompson complained to Defendant Guy on numerous occasions, but Guy did not take any action. (Id. ¶ 98.) "Many of the DBPD command and supervisory staff would often tell . . . Thompson and the other African-American police officers, 'If you don't like it, go the f— home!'" (Id. ¶ 99.)

On or about April 2007, Thompson received a letter from DBPD notifying him that it was against DPBD policy to have part-time employment and instructing him to resign by April 30, 2007. (Id. ¶ 102.) Upon their resignations in June 2007, both Thompson and Ojong turned in their issued firearms and, contrary to DBPD policy, Defendant Corporal Gabe refused to give them each a signed form acknowledging receipt of the firearm. (Id. ¶¶ 104-06.) In July 2007, Thompson moved his William Penn School District office from Darby Borough to Yeaden, Pennsylvania out of fear of intimidation and harassment. (Id. ¶ 107.) Like Ojong, Thompson did not become aware until 2009 that other officers who held part-time positions outside the DBPD had not been forced to resign. (Id. ¶ 109.)

The Amended Complaint asserts four causes of action. Count One asserts a claim under 42 U.S.C. § 1983 that Defendants violated Plaintiffs' rights under the Fourth and Fourteenth Amendments and under the Equal Protection clause by depriving Stockley of the right to earn a living and by terminating Ojong and Thompson from employment with the DBPD. Count Two asserts a claim under 42 U.S.C. § 1983 that Defendants created a racially hostile work environment

in violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments and the Equal Protection Clause. Count Three asserts that Defendants conspired to deprive Plaintiffs of their civil rights, including their right to equal protection, in violation of 42 U.S.C. § 1985. Count Four asserts a claim under 42 U.S.C. § 1983 that Defendants violated Stockley's rights to procedural due process under the Fourteenth Amendment by harming his reputation and employment opportunities without giving him a forum in which to refute "the claims against him." Defendants have moved to dismiss all four Counts of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## II.    STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we look primarily at the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson,

---

[1] This is Defendants' second motion to dismiss. They filed their first in response to Plaintiffs' original Complaint, but we dismissed that motion as moot when Plaintiffs amended their Complaint.

355 U.S. 41, 47 (1957)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). In the end, we will grant a Rule 12(b)(6) motion if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

### III. DISCUSSION

Defendants make several arguments in their Motion to Dismiss. First, they assert that all of the claims, as framed in the Amended Complaint, are barred by the applicable two-year statutes of limitations. Second, they argue that Count Two should be dismissed because Plaintiffs have failed to allege that they have exhausted their administrative remedies. Third, they assert that all of the claims against Darby Borough should be dismissed for failing to state a claim upon which relief may be granted for municipal liability under Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978). Fourth, they argue that Plaintiff is barred from recovering punitive damages against either the Borough or the individual police officers in their official capacity. Finally, they argue that Plaintiffs have failed to set forth facts sufficient to support their claims against Defendants Thomas, Gibney, Smythe, Guy, Salvatore and Gabe.

In response to Defendants' Motion, Plaintiffs concede that they have failed to state claims upon which relief may be granted against Defendants Gibney, Guy, Salvatore and Gabe. (Pl. Br. at 12.) They also concede that they cannot recover punitive damages from the Borough of Darby or

from any of the individual Defendants in their official capacities. (Id. at 8.) We therefore dismiss all claims against Defendants Gibney, Guy, Salvatore and Gabe, as well as all claims for punitive damages against the Borough and the remaining individual Defendants in their official capacities, and we address only Defendants' remaining arguments below.

### A. Statute of Limitations

As stated above, Defendants first argue that Plaintiffs' claims should be dismissed on statute of limitations grounds, because Plaintiffs do not base any of their claims on allegations of conduct that occurred in the two years before their suit was filed. Neither 42 U.S.C. § 1983 nor 42 U.S.C. § 1985 contain a specific provision regarding the time in which a claim under the statute must be brought. Federal courts therefore apply the state statute of limitations for personal injury actions to claims under both statutory provisions. Wilson v. Garcia, 471 U.S. 261, 276-78 (1985); Sameric Corp. of Delaware v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998); Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989). Pennsylvania's statute of limitations for personal injury actions is two years. See 42 Pa. Cons. Stat. Ann. § 5524(2). Thus, all four Counts of Plaintiffs' Amended Complaint are subject to a two-year statute of limitations.

#### 1. Plaintiffs Ojong and Thompson

In the Amended Complaint, Plaintiffs Ojong and Thompson complain about events that occurred in 2006 and 2007, and which culminated in their termination from employment with the DBPD in April of 2007. They did not file their initial Complaint in this case until February of 2010, almost three years after their terminations. Ojong and Thompson nevertheless argue that we should not dismiss their claims on statute of limitations grounds because they have alleged that they did not learn until 2009 that they were treated differently than white officers and, thus, the statute of

limitations was tolled until 2009 pursuant to the discovery rule.

As a general matter, a cause of action accrues and the statute of limitations begins to run "when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp., 142 F.3d at 599. Under the discovery rule, "'where the existence of the injury is not known to the complaining party and such knowledge cannot be reasonably ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible.'" Smith v. IMG Worldwide, Inc., 437 F. Supp. 2d 297, 305 (E.D. Pa. 2006) (quoting Gatling v. Eaton Corp., 807 A.2d 283, 289 (Pa. Super. Ct. 2002)).

Plaintiffs Ojong and Thompson allege in the Amended Complaint that they were not aware until 2009 that other DBPD officers who simultaneously held positions at other police departments were not forced to resign. (Id. ¶¶ 84, 109.) However, the mere fact that they did not discover until 2009 that their terminations may have been discriminatory does not trigger application of the discovery rule. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994) ("[A] claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." (citations omitted)); see also Ormsby v. Luzerne Cty Dept. of Pub. Welfare Office of Human Servs., 149 F. App'x 60, 63-63 (3d Cir. 2005) (concluding that §§ 1983 and 1985 claims accrued when plaintiff learned that she suffered injuries due to defendants' actions, not when she "obtained all of the facts surrounding her claims and realized that the defendant had violated her constitutional and civil rights") (internal quotation marks omitted). As stated above, the discovery rule only tolls the statute of limitations when the complaining party could not reasonably ascertain his injury during the statutory period. IMG Worldwide, 437 F. Supp. 2d at 305. In this case, Plaintiffs were well aware of their injuries, i.e.,

their poor treatment during their employment with the DBPD and their ultimate termination, no later than April of 2007.

In sum, we conclude that Plaintiffs Ojong's and Thompson's claims, all of which accrued no later than April of 2007, are barred by the two-year statute of limitations. We therefore grant Defendants' Motion to Dismiss all of Plaintiffs Ojong's and Thompson's claims.

        2.        Plaintiff Stockley

In the Amended Complaint, Stockley alleges that, starting in January 2007, and continuing to this day, by order of Defendant Smythe, he has not been permitted to transport any prisoner to or use the Darby Borough Prison System jail facilities. Defendants argue that Stockley's claims based on this conduct are barred by the statute of limitations. Stockley argues, however, that his claims are not barred because they are subject to the "continuing violations doctrine."

The Third Circuit has held that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)). This equitable exception to the two-year statute of limitations is commonly known as the "continuing violations doctrine." Id.

Because Stockley has alleged that Smythe continues to bar him from the Darby Borough jail facilities and prevent him from satisfying his duties as Constable, we cannot conclude, based on the allegations in the Amended Complaint, that the statute of limitations bars Stockley's claims based on that conduct. We therefore deny Defendants' motion to dismiss Stockley's claims on statute of

limitations grounds.

B.  **Exhaustion of Administrative Remedies**

Defendants next argue that we should dismiss Plaintiff Stockley's discrimination and hostile work environment claims under 42 U.S.C. § 1983 because Stockley fails to allege that he has exhausted his administrative remedies. However, a litigant need not exhaust his administrative remedies as a prerequisite to bringing an action under 42 U.S.C. § 1983. Patsy v. Board of Regents of State of Fla., 457 U.S. 496, 516 (1982). Accordingly, we deny Defendants' Motion to Dismiss to dismiss Stockley's § 1983 claims insofar as the motion relies on failure to exhaust administrative remedies.

C.  **Municipal Liability**

Defendants next argue that Plaintiff Stockley's claims against Darby Borough should be dismissed, because Stockley has failed to allege that the harm he allegedly suffered was a result of an official Borough policy or custom. In order to state a claim against a municipality under § 1983, i.e., a Monell claim, a plaintiff must allege in the complaint a policy or custom that deprived him or her of a federally protected right. Bd. of the Cty Commc'ns v. Brown, 520 U.S. 397, 404 (1997); Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). A municipal policy exists "when 'a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Berg, 219 F.3d at 276 (3d Cir. 2000) (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)); see also Monell, 436 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a tortfeasor – or , in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").

Here, Stockley maintains that he has adequately alleged a municipal policy, because he

alleges that Defendant Smythe issued a directive on January 2, 2007, denying Stockley the ability to transport DBPD prisoners or to use the Borough's jail facilities for any purpose. (Am. Compl. ¶ 27.) However, the Amended Complaint does not allege that Smythe was an official with "final, unreviewable discretion" to issue the January 2, 2007 directive. Andrews v. City of Phila., 895 F.2d 1469, 1481 (3d Cir. 1990); see also Heneghan v. Northampton Cmty Coll., Civ. A. No. 09-04979, 2010 WL 2730638, at *7 (E.D. Pa. July 8, 2010) ("Only those municipal officers and employees who have final policymaking authority can by their actions subject their municipal employers to Section 1983 liability." (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986))). Moreover, Stockley flatly asserts to the contrary in his brief in response to the Motion to Dismiss, where he states that Mayor Thomas "is responsible for directing the Chief of Police and the entire DBPD" and "is the final policymaking authority in the Borough regarding the conduct of the police department." (Pl. Br. at 10 (citing, e.g., 53 P.S. § 46121 and Borough Code § 1121)).

Under these circumstances, Stockley has failed to state a plausible Monell claim against the Borough, because he has failed to allege – and apparently cannot allege – that Smythe had the requisite policymaking authority to subject the Borough to liability for his issuance of the January 2, 2007 directive. We therefore grant Defendants' Motion to Dismiss the Monell claim, and we dismiss the Borough as a defendant in this action.

### D. Failure to State Claims Against Defendant Smythe and Thomas

Defendants next argue that we should dismiss Stockley's claims against Defendants Thomas and Smythe because the Amended Complaint fails to set forth facts pertaining to these two Defendants that could give rise to claims under either § 1983 or § 1985.

### 1. Defendant Mayor Helen Thomas

The sole allegation concerning Thomas in the Amended Complaint is an allegation that she "is and was at all times material hereto, the Mayor of Darby, Pennsylvania." (Am. Compl. ¶ 11.) This allegation alone is plainly insufficient to state any claim upon which relief may be granted against Thomas. Plaintiffs nevertheless argue that they have stated cognizable claims against the Mayor because she "was the final policymaking authority in the Borough on the conduct and actions of the DBPD and is liable under Monell for the deprivation of [Stockley's] rights." (Pl. Br. at 11.) However, a Monell claim, by definition, is a claim against a municipality. Monell, 436 U.S. at 690 (creating Monell claim by holding that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers") (footnote omitted). As such, there can be no Monell claim against an individual. See Vacek v. Pa. Judicial Conduct Bd., Civ. A. No. 08-221, 2010 WL 3338809, at *6 (W.D. Pa. Aug. 3, 1010) ("Although Plaintiff purports to bring his Monell claim against the individual Defendants, such a claim is only appropriate as to a government entity." (citation omitted)).

We therefore grant Defendants' Motion to Dismiss Stockley's claims against Mayor Thomas, both because the Amended Complaint contains no factual allegations concerning Thomas that could plausibly support a claim against her and because Stockley may not assert a Monell claim against her individually.

### 2. Defendant Robert Smythe

Defendants have also moved under Fed. R. Civ. P. 12(b)(6) to dismiss Stockley's claims

against Smythe. As described above, the Amended Complaint alleges that Smythe told the Superintendent and Assistant Superintendent of a School District in which Stockley served a School Investigator (1) that Stockley was a member of the Wheels of Soul Motorcycle Gang, and (2) that Stockley was telling politicians that "the White Man" was running Darby Borough. (Am. Compl. ¶¶ 22, 25.) It also alleges that Smythe ordered that a directive be sent to the DBPD that Stockley was "not allowed to transport prisoners or use the Darby Prison jail facilities for any purpose," and that Smythe "was able to assert influence over whether Stockley received assignments in his role as Constable from the court system." (Id. ¶¶ 27-28.) According to the Amended Complaint, since the date of the directive, Stockley has been afraid to execute warrants, and he is currently unable to earn a living in the Borough as Constable. (Id. ¶¶ 30-31.) On these spare facts, Stockley asserts claims against Smythe for violation of his equal protection rights under § 1983 (Count I); hostile work environment under § 1983 (Count II); conspiracy under § 1985 (Count III); and violation of his procedural due process rights under § 1983 (Count IV).

Rather than individually addressing each of Plaintiff Stockley's claims against Smythe and explaining why each fails to state a claim upon which relief may be granted, Defendants simply argue generally, citing no relevant law, that Stockley does not "assert any basis to establish that [Smythe] acted or failed to act as a result of [Stockley's] race." (Defs.' Br. at 10.) In the absence of a more developed argument, Defendant have provided us with an insufficient basis on which to dismiss the claims against Smythe with prejudice.

Nevertheless, we are having difficulty ascertaining the precise contours of the claims that Stockley asserts against Smythe. Among other apparent deficiencies, the Amended Complaint does not (1) allege any facts or create any inferences that individuals similarly situated to Stockley were

treated differently than he, as is necessary to state an equal protection claim, see Renchenski v. Williams, -- F.3d --, No. 07-3530, 2010 WL 3835217, at *17 (3d Cir. Oct. 4, 2010) ("'To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated.'" (quoting Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003))); (2) contain factual allegations or allow inferences of "severe and pervasive" conduct that could "create an 'objectively hostile or abusive work environment,'" as is necessary to state a hostile work environment claim,[2] Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); (3) clearly identify the individual interest encompassed within the Fourteenth Amendment's protection of "life, liberty or property" that is allegedly implicated in connection with Stockley's procedural due process claim, see Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); or (4) allege any factual basis to support an inference of an agreement and concerted action for purposes of his conspiracy claim. See Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009) (citation omitted).

In spite of Plaintiffs' considerable pleading deficiencies, we are unable to say at this stage of the proceedings that amendment of Stockley's claims against Smythe would be entirely futile. We therefore dismiss the claims against Smythe without prejudice and grant Stockley leave to amend those claims.[3] See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is

---

[2] It is not certain that a plaintiff may bring a hostile work environment claim under § 1983 in this jurisdiction. Pollock v. City of Phila., Civ. A. No. 06-4089, 2008 WL 3457043, at *8-9 (E.D. Pa. Aug. 8, 2008). To the extent that such a claim is permissible, it appears that it must be asserted as an equal protection violation and that the prima facie elements are the same as those under Title VII. Id. at *9(citations omitted.).

[3] In contrast, we specifically find that amendment of the other claims in Plaintiffs' Amended Complaint would be futile for the reasons set forth in this Memorandum.

vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002))).

## IV. CONCLUSION

For the foregoing reasons, we grant Defendants' Motion to Dismiss, but give Stockley leave to file a second amended complaint, asserting only claims against Defendant Smythe. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.